# Dennis K. Lavery

## v.

# Automation Management Consultants, Inc., et al.

Record No. 840616

September 4, 1987

Present: All the Justices

*Hugh Nugent (Hart, Nugent & Ahearn, P.C.*, on brief), for appellant.

*Stephen A. Armstrong; John S. Stump (Allen H. Sachsel; Terrence Ney; John F. Anderson; Boothe, Prichard & Dudley*, on briefs), for appellees.

THOMAS, J., delivered the opinion of the Court.

By motion for judgment, filed May 4, 1983, Dennis K. Lavery sued Automation Management Consultants, Inc. (AMCI), seeking damages for the unauthorized use of Lavery's name for trade purposes in violation of Code § 8.01-40. Lavery, who was engaged in the business of providing professional consulting services for information systems, complained that on August 31, 1981, AMCI, acting without his knowledge or permission, submitted his name as part of a proposal to provide consulting services to the United States Navy. AMCI was awarded the contract. Lavery received neither work nor compensation in connection with that contract.

AMCI filed a third party motion for judgment against Rehab Group, Inc. alleging that Rehab Group had provided Lavery's name to AMCI. Thereafter, both AMCI and Rehab Group moved to dismiss Lavery's suit on the ground that it was barred by the one-year statute of limitations contained in Code § 8.01-248. The trial court granted the motion to dismiss. Lavery appeals. We reverse.

Lavery contends that Code § 8.01-40,[1] which creates the cause of action upon which he relies, contains, in subpart B, its own

---

[1] That statutory provision reads as follows:

*Unauthorized use of name or picture of any person; exemplary damages; statute of limitations.* — A. Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. And if the defendant shall have knowingly

statute of limitations. Further, according to Lavery, that statute of limitations does not run until twenty years after the death of the person whose name, portrait, or picture is used without authority for purposes of advertising or trade. The language on which Lavery relies reads as follows: "No action shall be commenced under this section more than twenty years after the death of such person." Code § 8.01-40(B).

Lavery contends, in the alternative, that if 40(B) is not a traditional statute of limitations, then the limitation period contained in Code § 8.01-243(B) applies because he complains of damage to a property right. Lavery submits, in this regard, that Code § 8.01-40(A) gives rise to a property right in an individual or certain survivors to his name, portrait, or picture.

█ We reject Lavery's contention that Code § 8.01-40(B) sets forth the statute of limitations that applies to actions brought based on 40(A). First, the provision relied on by Lavery as the applicable statute of limitations does not operate like one. Lavery's view of the statute would permit a suit to be brought more than 100 years after the wrong occurs. For example, if the picture of a newborn baby were used for advertising or trade purposes without the permission of the baby's parents, and if that child lived to be 90 years old, by Lavery's analysis a suit would be timely if brought within 20 years of the person's death. This would be 110 years after the wrongful conduct.

Yet a true statute of limitations "reduces to a fixed interval the time between the accrual of the right and the commencement of the action. In short, a true statute of limitations prescribes a time period within which an action must be brought upon claims or rights to be enforced." 51 Am. Jur.2d *Limitations of Actions* § 13 (1970). Code § 8.01-40(B) does not provide a fixed interval between accrual of the right and commencement of the action. On the contrary, it provides a variable period between accrual of the right and commencement of the action.

█ The extraordinary time interval that could elapse before the suit must be filed is another indication that 40(B) is not a traditional statute of limitations because it flies in the face of the policy considerations that undergird the use of statutes of limitations.

---

used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award exemplary damages.

B. No action shall be commenced under this section more than twenty years after the death of such person.

A statute of limitations is designed to compel the exercise of a right to sue within a reasonable time; to suppress fraudulent and stale claims; to prevent surprise; to guard against lost evidence; to keep facts from becoming obscure; and to prevent witnesses from disappearing. *See Street* v. *Consumers Min. Corp.*, 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946). If Lavery's argument regarding 40(B) is correct, every one of the foregoing purposes of a true statute of limitations will be undermined.

We reject Lavery's contention regarding 40(B) for yet another reason: it is not written in the terminology of the other, traditional statutes of limitation contained in the Code. It states that no action shall be commenced "*more than* twenty years after the death of the person whose name, portrait, or picture is used without authority." (Emphasis added.) The only other places in Title 8.01 where we find use of the "more than" formulation is in Code §§ 8.01-237, 8.01-250, and 8.01-252. These are not true statutes of limitations but "cutoff" provisions that operate to define the maximum period within which an action may be brought, regardless of applicable statutes of limitations.

Code § 8.01-237 is an obvious cutoff provision. It reads as follows:

Notwithstanding the provisions of subsection A of § 8.01-229,[2] no disabilities or tacking of disabilities shall preserve to any person or his successors a right to make entry on or bring an action to recover land for *more than twenty-five years after* such right first accrued, although such person or persons shall have been disabled during the whole of such twenty-five years.

(Emphasis added.) It is plain from the foregoing that the use of the "more than twenty-five years after" language is to provide a maximum period in which this particular type suit can be brought irrespective of all other statutes of limitation and even of normal tolling provisions.

The predecessor to Code § 8.01-250 has been construed to be a cutoff provision. In *Virginia Military Institute* v. *King*, 217 Va. 751, 758, 232 S.E.2d 895, 899 (1977), we said the predecessor to Code § 8.01-250 "sets an outside limit within which the applicable

---

[2] Code § 8.01-229 concerns suspension or tolling of statutes of limitations because of such things as disabilities, death, and injunction.

statutes of limitation operate. Its purpose is not to extend existing limitations periods . . ., but to establish an arbitrary termination date after which no litigation of the type specified may be initiated." *See Hupman* v. *Cook*, 640 F.2d 497 (4th Cir. 1981); *Federal Reserve Bank of Richmond* v. *Wright*, 392 F. Supp. 1126 (E.D. Va. 1975).

Similarly, Code § 8.01-252 acts as a cutoff provision for actions based on foreign judgments. The pertinent language is as follows: "[I]n no event shall an action be brought upon any such judgment rendered more than ten years before the commencement of the action." This operates as an absolute outside limit in which any suit on a foreign judgment must be brought.

■ In light of the phraseology chosen by the General Assembly, the general policy considerations which support statutes of limitations, and the unusual way in which Code § 8.01-40(B) would operate if it were treated as the applicable statute of limitations, we hold that the legislature intended 40(B) to be a cutoff statute, *see School Board of the City of Norfolk* v. *United States Gypsum Company*, 234 Va. 32, 360 S.E.2d 325 (1987) (this day decided), and, as such, to operate as an outside time period in which true statutes of limitations would operate and beyond which no suit based on Code § 8.01-40(A) could be maintained. The General Assembly in enacting 40(B) was not setting a time period within which suit must be brought, instead, it was providing a cutoff point after which suit could not be brought. In so holding, we are cognizant of Lavery's argument that Title 8.01 is misleading in that it makes several references to Code § 8.01-40(B) as a traditional statute of limitations.[3]

---

[3] Lavery correctly points out that the revisor's note to Code § 8.01-228 states as follows: "Section 8.01-228 is new and recognizes that most of the statutory limitations for civil actions scattered throughout Title 8 and elsewhere in the Code have been collected in this Title 8.01 chapter. *Some are not found herein. E.g., see § 8.01-40(B)*." (Emphasis added.) Lavery also correctly asserts that the cross references following Code § 8.01-243 contain the following statement: "As to limitation of action for unauthorized use of name or picture, see § 8.01-40." Finally, as Lavery points out, the reviser's note following Code § 8.01-40 makes this statement: "Subsection B establishes a twenty-year limitation period which begins upon the death of the person whose name is misused." All of these references are unfortunate because, as Lavery argues, they are misleading. Yet, they are not law and they cannot control the exercise of this Court's obligation to say what the law is. Thus, notwithstanding the characterizations of 40(B) made by the revisors, we adhere to our holding that it is not the statute of limitations applicable to Lavery's cause of action.

We turn now to decide what statute of limitation properly applies in this case. AMCI submits that Lavery's suit is a personal action for which no other limitation is prescribed and thus a one year period of limitation applies. *See* Code § 8.01-248. Lavery counters, saying that his suit asserts a claim for injury to property and that a five year period of limitation applies. Code § 8.01-243(B). We agree with Lavery.

AMCI's contention that Code § 8.01-40 does *not* create a property right is based on New York law. According to AMCI, the Virginia statute derives from a New York statute which has been construed by the New York courts as a statute that does not create property rights. Thus, AMCI argues, this Court should follow the New York courts and reject Lavery's contention that the statute and his suit concern violation of his property rights.

A side by side comparison of the pertinent parts of the New York and Virginia statutes serves to highlight the fallacy in AMCI's argument.

| New York | Virginia |
|---|---|
| Any person whose name, portrait, or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained . . . may maintain an equitable action . . . against the person, firm, or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use . . . . | Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, *or if dead, of the surviving consort and if none, of the next of kin, or if a minor*, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. |
| New York Civil Rights Law § 51 (McKinney Cumm. Supp. 1987) | Virginia Code § 8.01-40(A) (emphasis added). |

The critical difference between the two statutes is that, *even after death*,[4] the Virginia statute affords protection against unauthorized use of a person's name, portrait, or picture. In New York, apparently, the claim under the statute exists only so long as the person who complains is alive to complain. This difference between the two statutes leads to different results. Consequently, the New York cases relied on by AMCI for the proposition that the New York statute created a "limited right of privacy . . . for the protection of the personality of an individual against unlawful invasion," *Gautier* v. *Pro-Football, Inc.*, 278 App. Div. 431, 438, 106 N.Y.S.2d 553, 560 (1951), *aff'd*, 304 N.Y. 354, 107 N.E.2d 485 (1952), are simply inapplicable to our analysis. Moreover, none of the New York cases relied on by AMCI concerned a statute of limitations question.

We are persuaded by Lavery's analysis. He submits that the Virginia statute is one which protects against the appropriation of one's name, portrait, or picture for advertising or trade purposes. In a discussion of the right of privacy, Prosser states that, based on the cases in which that tort has been recognized, it is not one tort but a complex of four torts. One of those four he described as "appropriation." He wrote as follows on that point: "The first form of invasion of privacy to be recognized by the courts consists of the appropriation, for the defendant's benefit or advantages, of the plaintiff's name or likeness." *Prosser and Keeton on The Law of Torts*, (5th ed. L. Ed. 1984) at 851 (hereinafter Prosser). He went on to explain that in an appropriation case, the plaintiff's name was treated essentially as a symbol. "It is the plaintiff's name as a symbol of his identity that is involved here, and not as a mere name." Prosser at 852. He reached the following conclusion concerning the gravamen of an appropriation case:

> Although the element of protection of the plaintiff's personal feelings is obviously not to be ignored in such a case, the effect of the appropriation decisions is to recognize or *create an exclusive right in the individual plaintiff to a spe-*

---

[4] At the time the Virginia statute was enacted, one of the basic tests for whether a cause of action involved injury to property as opposed to personal injury, was whether the claim was survivable. Thus, the fact that the General Assembly gave even limited survivability to claims under the statute indicates the legislature's intent that a property right was created by the statute. *See Keepe* v. *Shell Oil*, 220 Va. 587, 260 S.E.2d 722 (1979).

*cies of trade name, his own, and a kind of trademark in his likeness.*

Prosser at 854 (emphasis added). Prosser stopped just short of declaring the interest protected in an appropriation case to be a property interest. He said that it was pointless to engage in that dispute because the interest protected "is at least clearly proprietary in its nature." *Id.* And, "[o]nce protected by the law it is a right of value upon which the plaintiff can capitalize by selling licenses." *Id.*

Prosser's description of an appropriation case as one where a species of trade name or trademark is recognized helps persuade us that the Virginia statute protects property rights. This result is a logical extension of two Virginia cases. *Standard Drug* v. *General Electric*, 202 Va. 367, 117 S.E.2d 289 (1960), concerned the constitutionality of Virginia's then Fair Trade Act (Code §§ 59-1 et. seq.) (Repealed 1968). There, we said that a brand name or trademark embodied goodwill, that goodwill is an "intangible property right or asset," and that "[t]he owner or proprietor of the goodwill symbolized by his trade-mark is entitled to protection in his property right . . . ." *Id.* at 377, 117 S.E.2d at 296. In *Worrie* v. *Boze*, 198 Va. 533, 95 S.E.2d 192 (1956), we were faced with the question whether the five year statute of limitations concerning property applied to a claim of a conspiracy to solicit customers from a business. We held that it did. We stated that "the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts." *Id.* at 536, 95 S.E.2d at 196.

We note too that courts in other jurisdictions have found property rights in a person's name or likeness even without a statute of the kind that exists in Virginia. *See, e.g. Motschenbacher* v. *R. J. Reynolds Tobacco Company*, 498 F.2d 821 (9th Cir. 1974); *Ettore* v. *Philco Television Broadcasting Corporation*, 229 F.2d 481 (3rd Cir. 1956); *Munden* v. *Harris*, 153 Mo. Ct. App. 652, 134 S.W. 1076 (1911); *Canessa* v. *J. I. Kislak, Inc.*, 235 A.2d 62 (N.J. Super. 1967).

The *Munden* court wrote as follows about the nature of property:

Property is not necessarily a taxable thing any more than it is always a tangible thing. It may consist of things incorpo-

real, and things incorporeal may consist of rights common in every man. One is not compelled to show that he used, or intended to use any right which he has, in order to determine whether it is a valuable right of which he cannot be deprived, and in which the law will protect him. The privilege and capacity to exercise a right, though unexercised, is a thing of value — is property — of which one cannot be despoiled. If a man has a right to his own image as made to appear by his picture, it cannot be appropriated by another against his consent.

153 Mo. Ct. App. at 658, 134 S.W. at 1078. Then that court went on to ask these telling questions concerning the use of a person's image:

One may have peculiarity of appearance, and if it is to be made a matter of merchandise, why should it not be for his benefit? It is a right which he may wish to exercise for his own profit, and why may he not restrain another who is using it for gain? If there is value in it, sufficient to excite the cupidity of another, why is it not the property of him who gives it the value and from whom the value springs?

*Id.* The reasoning of *Munden* seems to us to apply with equal force to the use of a person's name.

In *Canessa*, the situation was quite similar to that in the instant appeal. The court was required to determine whether plaintiff's claim of misuse of his name and likeness was covered by a two-year personal injury statute of limitations or a six-year property damage statute of limitations. It determined that the claim was for damage to property and applied the six year statute of limitations. In rendering its decision it wrote as follows:

[I]t seems to us that however little or much plaintiff's likeness and name may be worth, defendant who has appropriated them for his commercial benefit, should be made to pay for what he has taken, whatever it may be worth.

. . . .

Entirely apart, however, from the metaphysical niceties, the reality of a case such as we have here is, in the court's opin-

ion, simply this: *plaintiffs' names and likenesses belong to them. As such they are property. They are things of value. Defendant has made them so, for it has taken them for its own commercial benefit.*

. . . .

We therefore hold that, *insofar as plaintiffs' claim is based on the appropriations of their likeness and name for defendant's commercial benefit, it is an action for invasion of their "property" rights and not one for "injury to the person."*

235 A.2d at 75-76 (emphasis added).

 We are of the view that Code § 8.01-40(A) is aimed at preventing the appropriation, without consent, of an individual's name or likeness while he is alive and for twenty years after he dies. We hold that Code § 8.01-40(A) creates in an individual a species of property right in their name and likeness. Consequently, we hold further that the trial court erred in applying the limitation period contained in Code § 8.01-248 and that the court should have applied the limitation period contained in Code § 8.01-243(B). Therefore, we will reverse the judgment of the trial court and remand the case for trial.

*Reversed and remanded.*

WHITING, J., concurs in the result.

I concur in the majority's holding but do not agree that Code § 8.01-40(B) is not a statute of limitation for the reasons set forth in my dissent filed this day in the case of *School Board of the City of Norfolk* v. *United States Gypsum Co.*, 234 Va. 32, 360 S.E.2d 325 (1987).