**Ruby Dell HARRIS, Plaintiff,**

v.

**CITY OF SEATTLE, et al., Defendants.**

No. C02–2225P.

United States District Court, W.D. Washington, at Seattle.

Feb. 26, 2004.

Phillip Aaron, Seattle, WA, for plaintiff.

Roger L. Hillman and Jennifer D. Bucher, Garvey Schubert Barer, Seattle, WA, for defendants City of Seattle, VanNoy, Compton, Sherron, Sidran, Skagen, Schell, Schade, Weston, Alves, Cohen and Harris.

Gretchen Herbison and Medora A. Marisseau, Bullivant Houser Bailey, Seattle, WA, for defendants Washington Firm Ltd., Griffin, Moris and Sanders.

Bruce E.H. Johnson, Davis Wright Tremaine LLP, Seattle, and Diana C. Tate, Davis Wright Tremaine LLP, San Francisco, CA, for defendant KING Broadcasting Company.

## ORDER GRANTING DEFENDANT KING BROADCASTING'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO COMPEL

PECHMAN, District Judge.

This matter comes before the Court on Defendant KING Broadcasting Company's ("KING") Motion for Summary Judgment, (Dkt. No. 87), and Plaintiff's Motion to Compel the Continuance of Duane Pohlman's Deposition and Production of Documents, (Dkt. No. 105). Having considered all of the pleadings and supporting documents, the Court GRANTS KING's Motion for Summary Judgment. Plaintiff has failed to show that KING or KING's investigative reporter Duane Pohlman broadcast the news report at issue with the requisite actual malice necessary to succeed on her false light, outrage, and intentional infliction of emotional distress. The Court DENIES Plaintiff's Motion to Compel. Not only is the motion moot in light of the Court's grant of summary judgment, but Plaintiff has failed to show good cause why she could not have obtained this information earlier.

## BACKGROUND

Plaintiff Ruby Dell Harris is Secretary and Chief Examiner of the City of Seattle's ("City") Public Safety Civil Service Commission ("Commission"). Ms. Harris has alleged a racially motivated conspiracy involving many City employees to undermine her authority and the Commission itself. As part of this conspiracy, she alleges that KING aired two broadcasts and a series of promos that were defamatory, invaded her privacy, placed her in a false light, and resulted in severe emotional distress.

The broadcasts involve a trip Plaintiff took to Las Vegas to attend a National Forum of Black Public Administrators conference. The Commission paid for Ms. Harris' attendance and expenses at the conference. The broadcast stated that Plaintiff arrived late to conference seminars and workshops and that overall she attended only 3.5 hours of the three-day conference. It also stated that she shopped and gambled rather than attend workshops. The broadcast alleged that Plaintiff behaved this way at a time when her department was facing criticism for overspending and mismanagement. However, Plaintiff claims that KING and its investigative reporter Duane Pohlman secretly videotaped her and that the broadcasts were false, misleading, and highly humiliating.

Plaintiff sued various City employees, firms, a commissioner, and a councilman in addition to KING. In her Second Amended Complaint, Plaintiff alleged defamation, outrage, invasion of privacy, false light, intrusion, intentional infliction of emotional distress, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

On March 3, 2003, the Court dismissed all of Plaintiff's claims against KING except for the false light, outrage, and intentional infliction of emotional distress claims. KING now moves for summary judgment on those three remaining claims.

## ANALYSIS

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### I. False Light

■ A defendant will be liable for the tort of placing the plaintiff in a false light if the false light would be highly offensive to a reasonable person and the defendant "knew of or recklessly disregarded the falsity of the publication and the false light in which the [plaintiff] would be placed." *Eastwood v. Cascade Broadcasting Co.,* 106 Wash.2d 466, 471, 722 P.2d 1295 (1986) (citing Restatement (Second) of Torts, § 652E (1977)). Thus, to succeed on a false light tort claim, the plaintiff must show that the defendant acted with actual malice. *Flowers v. Clinton,* 310 F.3d 1118, 1132 (2002). Plaintiff argues that the actual malice standard applies only to plaintiffs who are public officials, and that she is not a public official. The parties have not identified any cases that have addressed this particular point. Nor could the Court find any. *Eastwood* set out the standard in Washington, but did not address this specific issue. Most of the cases since *Eastwood* addressing false light claims have involved public officials. *Hoppe v. The Hearst Corp.,* 53 Wash.App. 668, 770 P.2d 203 (1989), *Wilson v. Cowles Publ'g Co.,* 2000 WL 1157110, 2000 Wa.App. LEXIS 1487 (Aug. 11, 2000). The eastern district of Washington applied the actual malice standard to a court administrator plaintiff's false light claim, but did not address whether the plaintiff was a public official. *Keenan v. Allan,* 889 F.Supp. 1320, 1392 (1995).

■ Even if the actual malice standard for false light claims applies only if the plaintiff is a public official, Plaintiff Harris is arguably a public figure. The determination of whether a plaintiff alleging defamation is a public official is a question of law. *Crane v. The Arizona Republic,* 972 F.2d 1511, 1517 (1992). Because the actual malice standard for false light claims is the same as that for defamation claims, defamation cases are relevant to this issue. The public official designation applies to "those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). The Washington Supreme Court further refined this issue. *Clawson v. Longview Publ'g Co.,* 91 Wash.2d 408, 589 P.2d 1223 (1979). *Claw-*

**1110**

*son* held that public employee will be deemed a public official for purposes of a defamation claim when the employee has assumed the risk of greater public scrutiny that accompanies public life. Even relatively low level employees may be deemed to have assumed the risk. The Court noted, however, that this is especially true when the employee exercises unsupervised discretion in the expenditure of public funds. *Id.* at 416, 589 P.2d 1223. In determining the public employee's designation, the Court highlighted two "pertinent variables: (1) the importance of the position held, and (2) the nexus between the position and the allegedly defamatory information—specifically, how closely the defamatory material bears upon fitness for office." *Id.* at 417. *Clawson* held that an administrator of a county's motor pool was a public official for purposes of his claim alleging defamation for a newspaper article discussing financial improprieties committed by him.

Plaintiff Harris was Secretary and Chief Examiner of the City's Public Safety Civil Service Commission. In that job, she supervised other City employees and managed the application process for persons seeking employment with the Seattle Police and Fire Departments. She supervised the testing process for these applicants. In this position, she appeared to have "substantial responsibility for or control over the conduct of" the testing for Police and Fire Department job-seekers. The KING broadcast concerns her attendance at a National Forum For Black Public Administrators paid for by the Commission. Because she was a public administrator for the Commission, the broadcast bears directly on her fitness for her position. As such, there is a strong nexus between her position and the allegedly false light statements in KING's broadcast. The fact that she did not exercise unsupervised discretion in the expenditure of public funds is not dis-

positive. This was an added factor in *Clawson,* but not an essential one. Likewise, the fact that three commissioners functioned as her supervisors does not negate her status as a public official. Therefore, Plaintiff Harris is a public official for purposes of her false light claim.

Plaintiff must show that KING or Pohlman acted with actual malice in broadcasting the report on Plaintiff's attendance at the Las Vegas conference. Actual malice is a subjective standard; it turns on the defendant's state of mind. *Flowers,* 310 F.3d at 1131. To establish actual malice, the plaintiff must prove that the defendant either knew the expression was false or recklessly disregarded *obvious* warning signs that it contained falsities. *Id., Hoppe,* 53 Wash.App. at 676, 770 P.2d 203. Reckless disregard "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Moreover, the plaintiff must prove by clear and convincing evidence that the defendant acted with actual malice. *Flowers,* 310 F.3d at 1130.

Plaintiff has not shown that KING or Pohlman acted with actual malice. Plaintiff relies on Pohlman's admission that the visual image of Plaintiff in the casino that was included in the broadcast may have been shot during Plaintiff's lunch hour even though Pohlman's intent was to show only images that were taken while the conference was in session. (Johnson Dec., Ex. H at 123–25). According to Plaintiff, this knowledge that the image may not have been what it purported to be constitutes actual malice. However, Pohlman stated that he did not intend to do this and

that he did not believe that this affected the accuracy of the report even if true. (Id.) He testified that he believes and continues to believe that the statements in the report were truthful. (Id.)

Plaintiff cites to *St. Amant* for the principle that mere assertions by the defendant that he believed the publication was truthful is not necessarily sufficient to prove that he did not act with actual malice. 390 U.S. at 731, 88 S.Ct. 1323. However, *St. Amant* noted that professions of good faith are not persuasive when the story "is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *Id.* at 732, 88 S.Ct. 1323. Here, the KING broadcast was not the product of Pohlman's imagination, nor based on unverified information, nor fabricated by Pohlman. Pohlman investigated whether Plaintiff attended the conference workshop by observing where she went during the conference hours. Thus, there is no reason to discount his testimony when it is uncontroverted.

 Absent evidence that Plaintiff did not gamble during conference hours at all, the fact that the report may have included an image from the wrong time frame does not indicate that Pohlman or KING acted with reckless disregard for the accuracy of the report. Plaintiff has not introduced evidence that she did not gamble during conference hours. In fact, in her deposition, she could not recall how much time she spent attending the conference or gambling, or what time of day she gambled. (Johnson Dec., Ex. B at 226–27, 232–33). She has since contradicted this testimony in her January 12 declaration, stating that the only time she spent in the casino was her free time. (Harris Dec., ¶ 5). However, "[a] party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony

with a later declaration." *Disc Golf Ass'n v. Champion Discs, Inc.,* 158 F.3d 1002, 1008 (9th Cir.1998). Therefore, Plaintiff has not put forth sufficient evidence to prove that Pohmlan or KING acted with actual malice in broadcasting the report.

Plaintiff also argues that Pohlman failed to interview two of the three commissioners who supervised Plaintiff, both of whom rated allegedly rated Plaintiff's management performance as high. Similarly, she argues that Pohlman failed to include statements from the Police and Fire Departments praising Plaintiff's management. However, Pohlman's failure to include certain material in his report cannot constitute actual malice. "Failure to investigate does not itself establish bad faith." St. Amant, 733.

In summary, Plaintiff has not shown by clear and convincing evidence that the Pohlman or KING knew that the broadcast included false information or that they recklessly disregarded obvious warning signs that it included false information. Therefore, Plaintiff's false light claims against KING and Pohlman fail as a matter of law.

## II. *Outrage and Intentional Infliction of Emotional Distress*

 Plaintiff's outrage and intentional infliction of emotional distress claims against KING similarly fail because Plaintiff has not shown that KING broadcast the report with actual malice. A public official may not recover for intentional infliction of emotional distress arising out of a publication unless she shows that the defendant acted with actual malice. *Hustler Magazine v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), *Hoppe,* 53 Wash.App. at 677, 770 P.2d 203 (applying actual malice standard to intentional infliction of emotional distress claim). Therefore, "an emotional distress

claim based on the same facts as an unsuccessful libel claim cannot survive as an independent cause of action." *Leidholdt v. L.F.P. Inc.,* 860 F.2d 890, 893 n. 4 (9th Cir.1988). Further, outrage claims are inseparable from emotional distress claims. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1193 (9th Cir.1989). Consequently, Plaintiff's outrage and intentional infliction of emotional distress claims fail as a matter of law.

### III. Plaintiff's Discovery Request

 Plaintiff argues that summary judgment is not appropriate because Plaintiff has not completed her deposition of Pohlman nor obtained documents that she claims Pohlman's counsel promised to provide. While Rule 56(f) gives the Court discretion to continue a summary judgment motion if the party opposing the motion can show that she cannot gather the facts necessary to fully oppose the motion, Plaintiff has not moved for a Rule 56(f) continuance. Moreover, even if she had, it would unlikely be granted. The dispositive motions deadline was November 24, 2003. Plaintiff waited until November 10, over one year after Plaintiff named KING and Pohlman as defendants in this case, to serve a notice of deposition of Pohlman. She deposed Pohlman on November 23, but claims that she needs more time to complete the deposition. Plaintiff waited until November 24 to serve KING with interrogatories and requests for production. Plaintiff has not pointed to any obstacles that prevented her from taking Pohlman's deposition or seeking the desired documents earlier. Such dilatory discovery efforts would likely not justify a continuance. Absent a request for a continuance, there is no reason to put off ruling on this summary judgment motion. The Plaintiff had well over one year to conduct discovery. Her failure to do so does not create a material issue of fact.

Consequently, her Motion to Compel is DENIED.

### CONCLUSION

The Court GRANTS KING's Motion for Summary Judgment on Plaintiff's false light, outrage, and intentional infliction of emotional distress claims because Plaintiff has failed to show that KING or Pohlman acted with the requisite actual malice necessary to succeed on these claims. The Court DENIES Plaintiff's Motion to Compel the Continuance of Duane Pohlman's Deposition and Production of Documents. Not only is the motion moot in light of the Court's grant of summary judgment, but Plaintiff has failed to show good cause why she could not have obtained this information earlier.

The clerk is directed to provide copies of this order to all counsel of record.