**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

AUG 1 2025

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHRIS ADAMSON; JASON BRAY;
LUCAS COLE; SHAUN DARBY;
CYNTHIA FAJARDO; JAMES MAAS;
DARRIN RAYNER; ELIZABETH
REIGLE; RYAN OLIVAREZ, individuals,

Plaintiffs - Appellants,

v.

PIERCE COUNTY MUNICIPALITY, a
local government; JAMES SCHACHT,
Deputy Prosecuting Attorney, officially and
individually; FRED WIST, Deputy
Prosecuting Attorney, officially and
individually; PAUL PASTOR, Sheriff,
officially and individually; BRENT
BOMKAMP, Acting Sheriff and
Undersheriff, officially and individually,

Defendants - Appellees.

No. 24-3545

D.C. No.
3:21-cv-05592-TMC

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Tiffany M. Cartwright, District Judge, Presiding

Argued and Submitted July 8, 2025
Seattle, Washington

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: McKEOWN, PAEZ, and SANCHEZ, Circuit Judges.

Plaintiffs are nine members of the Pierce County Sheriff's Department ("Sheriff's Department") Special Investigations Unit ("SIU"). Plaintiffs appeal the district court's dismissal of claims against prosecutors James Schacht and Fred Wist ("Prosecutor Defendants") of the Pierce County Prosecuting Attorneys Office ("Prosecuting Office") and grant of summary judgment in favor of former Sheriff Paul Pastor, former Undersheriff Brent Bomkamp ("Officer Defendants"), and Pierce County. Because the parties are familiar with the facts, we do not recount them here.

We review de novo a district court's dismissal under Rule 12(b)(6) as well as a grant of summary judgment. *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005) (dismissal); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019) (summary judgment). Whether a public official is entitled to absolute immunity is a question reviewed de novo. *Botello*, 413 F.3d at 975. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

1. The district court erred in concluding that all alleged conduct by Prosecutor Defendants constituted prosecutorial conduct protected by absolute immunity. The applicability of absolute immunity turns on whether a prosecutor is acting as "an officer of the court" or "is instead engaged in . . . investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citing

*Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)).  The touchstone of the analysis is whether the prosecutor's act is "intimately associated with the judicial phase of the criminal process."  *Id.* at 343.  Absolute immunity is an "extreme remedy" and should be granted "only where 'any lesser degree of immunity could impair the judicial process itself.'"  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en banc) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Where "numerous separate acts" by prosecutors are alleged, "each . . . must be considered individually."  *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).  Here, the district court failed to conduct an individualized analysis of whether each of the six acts challenged by Plaintiffs[1] fall outside the prosecutorial function.  The acts alleged are: (1) Schacht and Wist's communications with the press, including the publication of Plaintiffs' names on the Prosecuting Office's *Brady* list, (2) Schacht and Wist's statements to Kitsap County investigators during its investigation into SIU, (3) Schacht's referral of a criminal investigation to the FBI, (4) Schacht and Wist's decline memos and explanatory letter to Undersheriff Bomkamp, (5) Schacht's gathering of potential impeachment evidence and placement of Plaintiffs on the *Brady* list, and (6) Schacht's interrogation of SIU officers pursuant to the Prosecuting Office's own investigation.

---

[1] We conclude that Plaintiffs adequately alleged and presented these acts in their complaint and briefing before the district court.

We agree with Plaintiffs that Schacht and Wist's alleged communication with the press, statements to Kitsap County investigators, and referral of a criminal investigation to the FBI did not serve prosecutorial functions. Therefore, those acts are not protected by absolute immunity. Although making "[s]tatements to the press may be an integral part of a prosecutor's job," "[c]omments to the media have no functional tie to the judicial process," so are not made pursuant to a prosecutor's "role as advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993). Similarly, when Schacht and Wist spoke with Kitsap County investigators, they functioned as witnesses rather than prosecutors engaged in "the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Id.* at 278; *see also Milstein*, 257 F.3d at 1010-11. Finally, Schacht's FBI referral did not serve a prosecutorial function. The referral facilitated an investigation performed traditionally by law enforcement "to determine whether a crime has been committed." *Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003) (citation omitted); *see also Milstein*, 257 F.3d at 1011 (holding that filing a crime report is not the function of an advocate and does not confer absolute immunity).

However, the three remaining acts alleged by Plaintiffs are squarely within a prosecutor's judicial function and entitled to absolute immunity. Schacht and Wist's decline memos and letter to Undersheriff Bomkamp memorialized why the

Prosecuting Office decided not to prosecute certain cases. A prosecutor's assessment that he or she cannot prosecute an officer witness's case "falls entirely within a prosecutor's judicial function . . . even if that judgment is harsh, unfair or clouded by personal animus." *Roe v. City & Cnty. of S.F.*, 109 F.3d 578, 584 (9th Cir. 1997). For the same reasons, Schacht's placement of Plaintiffs on the *Brady* list in light of potential impeachment evidence serves an important prosecutorial function. *See id.* Finally, Schacht's own investigation of SIU officers was a function of the prosecutor's "affirmative duty to disclose evidence favorable to a defendant," which includes "a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 432, 437 (1995).

We therefore reverse the district court's dismissal of all claims against Prosecutor Defendants and remand for the district court to determine whether Prosecutor Defendants are entitled to qualified immunity for acts that fall outside of the prosecutorial function. *See Botello*, 413 F.3d at 975-76 ("[W]hen prosecutors perform administrative or investigative functions, only qualified immunity is available.").

2. The district court did not err in dismissing Plaintiffs' *Monell* claim. To establish municipal liability under *Monell*, a plaintiff must prove that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy

amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (citation omitted). Plaintiffs have failed to allege the existence of a constitutional violation. Their allegations that Defendants' policies "eliminate[d] discretionary authority of law enforcement" and lacked a "name clearing protocol" for officers on a *Brady* list, do not raise a colorable due process claim under the Fourteenth Amendment.

3. The district court properly granted summary judgment in favor of Officer Defendants on Plaintiffs' First Amendment retaliation claim. Where a retaliation claim is brought by government employees, we apply a five-step sequential analysis. *Hernandez v. City of Phx.*, 43 F.4th 966, 976 (9th Cir. 2022). Under the fourth step of our analysis, we evaluate "whether the state had an adequate justification for treating the employee['s]" speech on a matter of public concern "differently from [that of] other members of the general public." *Id.* "[T]he employer must show that 'its own legitimate interests in performing its mission' outweigh the employee's right to speak freely." *Id.* (quoting *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam)).

We agree with the district court that Officer Defendants had an adequate justification for the second shutdown of SIU because "Pastor and Bomkamp's interest in the proper functioning of [the Sheriff's Department] and its ability to

work with the prosecutor's office outweigh[ed] Plaintiffs' First Amendment right[]" to criticize the Prosecuting Office in a news article. An "employer's interest outweighs the employee's interest in speaking 'if the employee's speech . . . impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Cochran v. City of L.A.*, 222 F.3d 1195, 1200 (9th Cir. 2000); *see also Pool v. VanRheen*, 297 F.3d 899, 908 (9th Cir. 2002). Here, Plaintiffs' public criticism led the Prosecuting Office to suspend its prosecution of cases investigated by SIU officers, actions that clearly impeded the performance and regular operation of the Sheriff's Department.

Plaintiffs allege that Plaintiff Lieutenant Cynthia Fajardo's campaign for Sheriff was "a substantial or motivating factor" for Officer Defendants' first shutdown of SIU. *See Hernandez*, 43 F.4th at 976. As the district court concluded, however, Plaintiffs failed to present any evidence that Officer Defendants' conduct was motivated by their opposition to Fajardo's campaign. Even if Defendants were aware of Fajardo's political activity, this is insufficient to raise a genuine dispute of material fact that the shutdown was linked to the campaign. *See Gillette v. Delmore*, 886 F.2d 1194, 1198-99 (9th Cir. 1989).

4. The district court properly granted summary judgment in favor of Defendant Pierce County on Plaintiffs' state law claims for defamation, false light, and outrage. With respect to defamation and false light, Plaintiffs fail to establish

falsity, a required element for both claims. *See Herron v. KING Broad. Co.*, 746 P.2d 295, 300-01 (Wash. 1987) (en banc) (defamation); *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1297 (Wash. 1986) (en banc) (false light). Plaintiffs have failed to provide any evidence that establishes the falsity of Sheriff Pastor's statement that he had learned of concerns about SIU and that the Sheriff's Department intended to follow "correct procedures in order to hold offenders accountable and maintain the public's trust." Nor have Plaintiffs presented evidence to establish the falsity of Faber's statement that "they had seen enough to know" that certain SIU officers should be added to the *Brady* list. Plaintiffs' disagreement with the Prosecuting Office's prosecutorial judgment does not establish falsity.[2]

With respect to Plaintiffs' outrage claim, they have failed to adduce evidence of "intentional or reckless infliction of emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (en banc). Plaintiffs' conclusory allegations are not evidence of intent.

**AFFIRMED in part, REVERSED in part, and REMANDED.**[3]

---

[2] We decline to address the additional statements presented by Plaintiffs on appeal that were not presented to the district court below. *Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025).

[3] We deny as moot Defendants' motion to strike because we do not rely on the contested parts of the record. (Dkt. 22).